### AFFIDAVIT OF KURT KORNCHUK, APD/DEA TASK FORCE OFFICER
### In Support Of Verified Complaint For Forfeiture

I, KURT KORNCHUK, being duly sworn and on oath, do hereby depose and state:

### PROFESSIONAL EXPERIENCE & QUALIFICATIONS

1.      I am employed by the Anchorage Police Department (APD), Anchorage, Alaska and have been employed as a Peace Officer in the State of Alaska since 1995. I am currently assigned to the Detective Division, Narcotic Unit and have maintained that assignment since April 2003.

2.      I was formerly assigned to the United States Department of Justice (DOJ), DEA Anchorage District Office, from March 1999 through April 2003. I was designated as a federal officer with DEA and conducted state and federal drug investigations.

3.      I was formerly employed by the California Department of Justice, Bureau of Narcotic Enforcement (BNE) as a Special Agent. I was assigned to the Clandestine Laboratory Enforcement Program in the San Francisco Bay Area.

4.      Prior to BNE, I was employed by the California Highway Patrol (CHP) from August 1987 through October 1994. As a CHP Investigator, I was assigned to the DEA, San Francisco Field Division, Clandestine Laboratory Enforcement Team, from October 1992 through October 1994.

5.      I have received special training and expertise in the field of narcotic investigations and hazardous materials violations including but not limited to:

• 24 hours California District Attorney's Association-Introduction to Environmental Violations;
• 40 hours California Specialized Training Institute-Hazardous Materials Investigations Course;
• 80 hours DEA-Clandestine Laboratory Investigation and Safety Certification training;
• 8 hours DEA-Confined Space Safety Training;
• 80 hours DEA-Basic Narcotic Agent School, including 4th Amendment Training presented by the Honorable John J. Ryan, Judge Superior Court, Orange County, CA;
• 8 week National Drug Enforcement Officer's Academy-sponsored by DEA at the FBI Academy, Quantico, VA. The topics included: Analytical Investigations, Drug ID, Current Law Review, Smuggling, Conspiracy, Clandestine Labs and Money Laundering;
• 5 week California DOJ-Special Agent Orientation Training which included: Search and Seizure Update, Miranda, Narcotic and Controlled Substance Update and Search Warrant Preparation;
• 40 hours California DOJ-Clandestine Laboratory Safety & Investigation Certification Training;
• 32 hours Clandestine Laboratory Investigators Association - Training conference;
• 32 hours DEA-Clandestine Laboratory Site Safety Officer School;
• 40 hours DEA–Clandestine Laboratory Tactical School;
• 8 hours DEA-Clandestine Laboratory Rectification (annually).

6.  I have spoken to and worked with experienced federal, state and local drug investigators. I have participated in the service of well over 200 search warrants during my law enforcement career, most of which were for drug related violations. I have written and served numerous search warrants since my employment as a Peace Officer. I have participated in excess of 200 arrests for being under the influence, simple possession, possession for sales and manufacturing of narcotics and dangerous drugs. I have participated in the seizure of over 250 clandestine laboratories, the majority of which were for the manufacture of methamphetamine.

7.  I have testified in State and Federal Courts regarding the manufacturing, influence, possession and possession for sale of controlled substances. I have interviewed suspects who have been arrested for sales, drug trafficking, cultivation of marijuana and manufacturing of methamphetamine.

8.  **I have interviewed drug users and traffickers and have discussed** with them the **lifestyles,** appearance and habits of drug traffickers and users. I have discussed packaging, preparation, and method of operation and security used by drug traffickers.

9.  I have examined recordation consisting in part of buyers and seller's lists and pay and owe ledgers. I know that persons involved in the distribution of controlled substances often use computers for recordation purposes as well as ordering items used in the manufacture, distribution, possession and ingestion of controlled substances from other individuals via the internet and electronic mail.

10. I have examined drug paraphernalia consisting in part but not limited to clandestine laboratory glassware and equipment, chemicals used in the manufacturing of controlled substances, weighing devices, packaging materials, diluting and cutting agents, smoking and injecting devices used to ingest controlled substances.

## HISTORICAL INFORMATION

1.  On 9/8/95, APD Officers went to a house located at 1701 Stanton Avenue, Anchorage, the residence of James SHORT, because of a call of a disturbance involving a gun. The officers smelled marijuana and notified the APD Drug Unit. A search warrant was obtained and 142 growing marijuana plants were seized.

2.  The results of the above investigation identified many conspirators. However the principal conspirators were identified as James SHORT, Cameron SHORT, and Christopher SHORT, all of which are brothers.

3.  On 4/8/98, another search warrant was served at 1701 Stanton Avenue in reference to the **cultivation of marijuana.** 154 growing marijuana plants were seized along with associated equipment to include mobile track lighting systems, lights, reflectors, air purifiers, and fans. Cameron SHORT and Darren HEFFINGTON were identified as suspects.

4.    On 12/14/98, "Confidential Informant" (CI) (no further information) called an APD detective and said that there was $800,000.00 worth of marijuana growing in a cabin owned and controlled by James SHORT. The CI said the telephone number for the cabin was (907) 495-5474. The CI also said that the SHORTs were also growing marijuana in a trailer off of 64th Avenue in Anchorage.

5.    On 12/16/98, a search warrant was executed at 15790 Greenleaf Drive in the Susitna Valley. Your Affiant, along with DEA Agents, APD Detectives and State Troopers, participated in the service of the search warrant. A small two story cabin was visible on the property. Upon entry to the cabin a tunnel was discovered which lead to a large underground marijuana cultivation facility comprised of four 40 foot shipping containers all connected. The temperature in the facility was warm and wilted marijuana leaf debris was scattered about the floor. 27 light reflectors and bulbs were suspended from the ceiling of the facility.

6.    A search warrant was subsequently obtained and executed 3566 East 64th Avenue, a residence of Christopher SHORT. Christopher SHORT was home at the time of the search warrant service. Fourteen mature "mother plants" (plants grown to produce marijuana cuttings) were seized along with track lighting and other assorted marijuana cultivation equipment.

## CURRENT INVESTIGATION

1.    The APD Cooperating Source (CS) said that James Kirk SHORT grows marijuana in the downstairs and an additional growing room of his residence located at 6500 ROCKRIDGE DRIVE, Anchorage, AK 99516.

2.    On 4/18/05, APD Narcotic Unit Detective Mikell VonDolteren and your Affiant conducted a debriefing of the CS.

3.    The CS said that Shon DOZARK is tending 80 to 100 growing marijuana plants in the garage, and 20 to 30 more marijuana plants behind a false wall inside a residence located at 8117 SPRING STREET, Anchorage, AK 99518. The CS said the CS was last inside the residence ten days prior to the interview (on approximately 4/9/05). The CS said the marijuana plants in the garage were growing under four lighting systems and are growing in pots of soil. The CS said that the marijuana plants growing in the back room are on a hydroponics system and track lighting.

4.    The CS said that DOZARK drives a purple 1996 or 1997 Mitsubishi Eclipse. The CS described DOZARK as a white male, approximately 18 years old, thin build, and weighs approximately 120 pounds and has with brown spiked hair.

5.    On 5/25/05, at approximately 1:51 PM, surveillance was established in the area of 8117 SPRING STREET.

6.      At approximately 2:00 PM, a grey Chevrolet pick-up truck bearing Alaska license DWU786 arrived in the driveway of the residence. Shon DOZARK left the residence and entered the truck. The truck then departed the area.

7.      During the surveillance, approximately three black plastic bags factory labeled Premier brand Pro-Moss, approximately three cubic feet per bag. These bags were stacked against the south side of the garage.

8.      On 7/21/05, at approximately 9:00 PM, Detective VonDolteren and your Affiant conducted foot surveillance to the south of 6500 ROCKRIDGE DRIVE in Anchorage.

9.      Detective VonDolteren and your Affiant remained south of the south property line of 6500 ROCKRIDGE DRIVE and observed numerous marijuana plants growing against the south wall of the residence. The marijuana was growing in an approximate five by seven foot area. Detective VonDolteren and your Affiant also observed an illuminated four foot fluorescent plant growing lamp which was suspended horizontally near a window at the south end of the residence.

10.     On 9/13/05, at approximately 7:50 PM, APD Narcotics Unit Detective Brian Balega and your Affiant established surveillance in the area of 6500 ROCKRIDGE DRIVE.

11.     Numerous vehicles were seen parked on the property in the gravel parking area north of the residence. These vehicles included a black 1968 Chevrolet Corvette, a grey 1970s vintage AMC Javelin, a maroon 1970s vintage Ford Mustang, a 1980s maroon and brown Ford pick-up truck with a white camper shell, a 1980s primer grey Ford Bronco, a gold SUV which resembled an 1980s vintage Ford Bronco, two blue snowmobiles on a trailer, and a red 4 wheeler ATV.

12.     A makeshift green house was observed behind the residence to the south east. The structure was made of semi clear plastic sheeting and 2x4 or 2x6 dimensional lumber and appeared to be approximately 20 feet by 12 feet in size. It looked as if green plants were growing under the plastic sheeting.

13.     On 9/14/05, at approximately 6:18 PM, your Affiant established surveillance in the area of 6500 ROCKRIDGE DRIVE.

14.     Your Affiant observed James Kirk SHORT working on a primer grey Ford Bronco that was parked in the driveway northwest of the residence. SHORT was wearing a black knit cap, a black t-shirt and blue jeans. SHORT was removing items from the passenger compartment of the vehicle, such as the interior parts. A juvenile male, approximately 9 to 12 years of age, was playing in the driveway and around the residence. The juvenile had brown shoulder length hair and was wearing a black t-shirt.

15.     At approximately 7:09 PM, the white juvenile walked across the street to 6501 Rockridge Road, (RONAN residence), and called "grandpa" to someone at that location. SHORT was still burning debris in his front yard at the time.

16. At approximately 7:14 PM, your Affiant observed SHORT speaking on a cell phone while again standing in his driveway of his residence.

17. At approximately 7:19 PM, the white juvenile returned to 6500 ROCKRIDGE DRIVE. As the juvenile approached SHORT, who was working on the Ford Bronco in the driveway, your Affiant heard the juvenile refer to SHORT as "Dad".

18. On 9/14/05, at approximately 10:39 PM, Detective Balega observed SHORT exit the rear of the residence and plug in an electric heater at the make-shift greenhouse to the rear of the residence. SHORT then reentered the residence.

19. On 10/6/05, at approximately 1:30 PM, your Affiant spoke with APD CS 05-05 via telephone.

20. The CS said that the CS had recently spoken with Shon DOZARK about the marijuana growing equipment which had been used at 8117 SPRING STREET for the growing of marijuana.

21. The CS said that DOZARK said the equipment is not available for sale because he is still using it for the growth of additional marijuana.

22. In January 2005, a query of the municipality of Anchorage property tax records and Chugach Electric Association for 6500 ROCKRIDGE DRIVE indicated the following: The residence has 1,634 square feet of living area and has gas central heat. The electricity is in the name of Linda RONAN with a low Kilowatt usage of 671 in July 2004 and a high of 1,500 in January 2005.

23. As of June 23, 2005, an application for service in the name of James Kirk SHORT was submitted to Chugach Electric Association, indicating a mailing and service address of 6500 ROCKRIDGE, Anchorage. A recent report from Chugach Electric Association indicated an approximate Kilowatt usage of 1,944 for a 32-day period in September 2005.

24. A query of the Municipality of Anchorage property tax records and Chugach Electric for 8117 SPRING STREET, indicate the following: The residence has 832 square feet of living area and has gas central heat. The electricity is in the name of Linda RONAN and Jason CLEMENTS with a low Kilowatt usage of 818 in April 2004 and a high of 2,868 in November 2004.

25. As of 6/24/05, an application for service in the name of Shon DOZARK was submitted to Chugach Electric, indicating a mailing and physical address of 8117 SPRING STREET. Another adult listed for 8117 SPRING STREET is James Kirk SHORT. A recent report from Chugach Electric Association indicated an approximate Kilowatt usage of 1,783 for a 30-day period in August/September 2005.

**BACKGROUND**

1. Based upon your Affiant's training and experience, as well as the training and experience of other local, state and federal narcotic agents whom your Affiant has spoken with, your Affiant knows that:

   A. Persons involved in the large scale cultivation of marijuana often use multiple locations to grow smaller amounts of marijuana. Multiple locations allow the grower to avoid federal prosecution should one of the locations be discovered by law enforcement. Multiple locations minimize the loss of marijuana and necessary cultivation equipment should one of the locations be seized by law enforcement or some other criminal activity. It also allows for crops to be spaced at different harvest dates to provide a steady income stream as well as maintaining a lower electric usage because people involved in the cultivation of marijuana are aware of methods of detection used by law enforcement.

   B. Persons involved in the large scale cultivation of marijuana often use multiple associates to shield themselves from the growing operations thus possibly avoiding prosecution should a location be discovered by law enforcement.

2. Your Affiant has personal knowledge that James Kirk SHORT has used numerous locations and conspirators to facilitate the large scale production of marijuana in the past.

3. Your Affiant is aware that the use of mobile track lighting is fairly uncommon in marijuana growing operations in Alaska. Your Affiant has personal knowledge that James Kirk SHORT and his associates have used mobile track lighting in the past to minimize electrical usage at least two locations.

4. Your Affiant knows that payment to conspirators for tending to growing marijuana plants often is a percentage of the crop.

5. Your Affiant knows that 3+ cubic feet bags of Pro-Mix and Pro-Moss are products commonly used by persons involved in the cultivation of marijuana and has located these products at numerous locations where growing marijuana plants were discovered.

6. Your Affiant knows that florescent work bench lighting devices are commonly used early on in the marijuana growing cycle for growing of younger marijuana plants.

7. Your Affiant knows that cash transactions and meetings in public places such as gas stations are consistent with the distribution of controlled substances.

8. Your Affiant knows that make-shift wood structures with plastic sheeting are consistent with the outdoor cultivation of marijuana and that such structures are to protect the plants from cold temperatures and visual detection from overhead.

9. Your Affiant knows that maintaining "mother plants" from which to "clone" new plants is a very common method to produce new marijuana plants. Your Affiant knows that $15 to $20

per plant for starter marijuana plants is consistent with the price paid by law enforcement for such plants on prior marijuana investigations in the Anchorage area.

10.    Your Affiant knows that tanks of carbon dioxide are used inside indoor marijuana cultivation operations because if a large amount of plants are photosynthesizing in a confined space, they will use up all of the carbon dioxide and supersaturate the space with oxygen. The plants need a fresh supply of CO2 in the room or they will stop growing. These clandestine operations do not get an adequate exchange of fresh air because the operator is aware of the odor associated with such operations.

11.    Your Affiant knows that while a usage of 1,944 Kilowatt hours of electricity at 6500 ROCKRIDGE DRIVE, the residence of James SHORT, is high, but not extremely high for a 1,634 square foot house with gas heat for the months of August/September, it is well over twice as high as it was for the same residence during the same time the previous year.

12.    Your Affiant knows that while a usage of 1,783 Kilowatt hours of electricity at 8117 SPRING STREET, the residence of Shon DOZARK, is high, but not extremely high for an 832 square foot house with gas heat for the months of August/September.

13.    Your Affiant knows that persons involved in the distribution of controlled substances maintain evidence of such activity in residences, garages, outbuildings and vehicles parked in and outside of structures.

14.    On 11/25/2005, a check of APSIN by Detective VonDolteren revealed that the following individuals **do not** possess a Medical Marijuana Card from the State of Alaska:

   James Kirk Short;
   Shon Dozark;
   Linda Darlene Ronan; and
   Charles Brian Ronan.

15.    Again, on 2/1/2006, a check of APSIN by Detective VonDolteren revealed that the following individuals **do not** possess a Medical Marijuana Card from the State of Alaska:

   Linda Darlene Ronan; and
   Charles Brian Ronan.

## EXECUTION OF SEARCH WARRANT ON 8117 SPRING STREET

1.    On 11-26-2005, Alaska State Search Warrant (No. 051217) was executed at 8117 SPRING STREET, by DEA Task Force Officers Eliezer Feliciano and Alvin Kennedy, and DEA Special Agents Mark Paine and Zach Jones.

2.    At the above-referenced search at 8117 SPRING STREET, the following items were discovered throughout the residence and seized as evidence:

    a.    32 growing marijuana plants were found in a grow room that was hidden behind a false wall, near the living room;

    b    142 dead marijuana plant root structures (aka "root balls") were found in the garage;

    c.    1 sandwich bag containing marijuana and a scale were found in the kitchen on the counter;

    d.    13 sandwich bags containing marijuana were found in a shoe box in a bedroom under a bed; and

    e.    Marijuana grow equipment to include: 4 growing lamp reflectors, 4 ballasts, 3 full-spectrum growing lamp bulbs, and at least 4 electrical timers.

3.    Also on November 26, 2005, your Affiant interviewed DOZARK at the DEA Anchorage office. In that interview, DOZARK admitted that considerably more marijuana plants (i.e., estimated over 100 additional plants) had been grown and harvested in the garage.

## EXECUTION OF SEARCH WARRANT ON 6500 ROCKRIDGE

1.    On November 26, 2005, Alaska State Search Warrant (No. 05-1218) was executed at 6500 ROCKRIDGE DRIVE, by APD Narcotics Unit and SWAT Team, DEA Group Supervisor Mark Payne, DEA Task Force Officer Jeff Gregg, DEA Special Agent Alan D. Lopez, and ATF Special Agent Daniel Woolbert.

2.    At the above-referenced search at 6500 ROCKRIDGE DRIVE, the following items were discovered throughout the residence and seized as evidence:

    a.    Approximately 307 rooted marijuana plants seized from the kitchen (the marijuana plants were in various stages of growth and were being cultivated with an elaborate and sophisticated soil/hydroponics and track lighting system);

    b.    Approximately 84 root balls of previously harvested marijuana plants seized from the kitchen;

    c.    Approximately 2 pounds of processed marijuana buds packaged in quarter-pound quantities;

    d.    Approximately 1 pound of marijuana leaves;

    e.    Two digital scales;

    f.    Approximately 1 ounce of suspected cocaine in a small plastic bag, which field tested positive for the presence of cocaine, seized from the master bedroom;

  g.  One shotgun;

  h.  One .22 caliber rifle;

  i.  **One .22 caliber handgun;** and

  j.  Various calibers of ammunition.

3. Also on November 26, 2005, James Kirk SHORT was questioned by a DEA special agent and an APD detective. After being advised of his Constitutional rights, SHORT stated that the residence at 6500 ROCKRIDGE was rented to him by his mother-in-law and that he lived with his 10 year old son. SHORT added that the marijuana cultivation discovered at the residence belonged to SHORT. SHORT also stated that he regularly traded pound quantities of marijuana for cocaine. SHORT admitted that he (SHORT) had been growing and consuming marijuana since the age of 12.

## CONCLUSION

 Based on the aforementioned facts, there is probable cause to believe that both parcels of Defendant real property (8117 SPRING STREET and 6500 ROCKRIDGE DRIVE) are subject to forfeiture to the United States pursuant to 18 U.S.C. § 881(a)(7).

 EXECUTED this 30th day of March, 2006 in Anchorage, Alaska.

_____
KURT KORNCHUK, Detective/Task Force Officer
Anchorage Police Department
Drug Enforcement Administration Task Force

 SUBSCRIBED AND SWORN to before me on this 30th day of March, 2006 in Anchorage, Alaska.

_____
NOTARY PUBLIC, State of Alaska
My Commission expires: 10/26/2007